## *In re* HELLER and another, Bankrupts.

*(District Court, D. New Jersey.* October 17, 1881.)

1. BANKRUPTCY—DISCHARGE OF THE BANKRUPT.

Where there are no assets, the bankrupt is entitled to his discharge on making application after the expiration of 60 days from the adjudication of bankruptcy, and before the estate has been settled and the assignee discharged.

2. SAME—SAME.

The right of a bankrupt to a discharge depends upon his own acts. Unless a party thereto, he is not bound by the acts of commission or omission of his former partner.

On Specifications against the Discharge of Rudolph Heller.

*E. A. S. Man,* for opposing creditor.

*C. F. Hill,* for bankrupt.

NIXON, D. J. Under the specifications and evidence in this case I think the bankrupt is entitled to his discharge. The objection, interposed by the counsel of the opposing creditors, that the petition was filed too late, is not valid. It is true that no assets have come to the hands of the assignee, and in such a case the act originally required that the application for discharge should be made within one year from the adjudication of bankruptcy. Rev. St. § 5108. But this provision was changed by the supplement of July 26, 1876, (19 St. at Large, 102,) in which the limitation of one year was dropped, and the application was allowed, where there were no assets, "at any time after the expiration of 60 days, and before the final disposition of the cause." I have heretofore held that this expression, "the final disposition of the cause," means the settlement of the estate and the discharge of the assignee. No such settlement or discharge has taken place in the present case.

The only specifications that the evidence tends to support are the two following:

(a) "That the said bankrupts have never delivered any of the books of account or writings of their firm to Moses Mendal, the assignee in bankruptcy duly appointed by the court, though requested so to do by him, but have fraudulently kept, detained, and concealed the same; that such detention and concealment of said books of account and writings was done wilfully by said bankrupts, and for the express fraudulent purpose of concealing the condition of their estate and effects, and to prevent and hinder their creditors from ascertaining the same, and to conceal their own fraudulent acts and doings in relation thereto, and to hinder and prevent their creditors from deriving any benefit therefrom. (b) That neither the said Heller nor the said Katz have delivered to the 'said Moses Mendal, assignee as aforesaid, their books of

account and writings relating to their property and effects; that in omitting so to do they acted fraudulent and negligently, and to hinder and impede their creditors, and contrary to the provisions of the said act."

These specifications, doubtless, were intended to incorporate the provisions of the second clause of section 5110 of the Revised Statutes, which do not allow a discharge to be granted "if the bankrupt has concealed any part of his estate or effects, or any books or writings relating thereto, or has been guilty of any fraud or negligence in the care, custody, or delivery to the assignee of the property belonging to him, at the time of the presentation of his petition and inventory," etc.

I do not stop to criticise the form of the specifications, as the counsel of the bankrupt did not think proper to do so, but accept and consider them as definite charges against one of the bankrupts, Heller, that he *concealed* the books of the firm and writings relating to the estate, and that he has been guilty of fraud or *negligence* in the delivery to the assignee of the property belonging to himself, or his firm, at the time of the presentation of his petition and inventory. It must be borne in mind that the partnership of Heller & Katz is in bankruptcy, and that this is the application of one of the partners, Heller, for his discharge. His right to a discharge depends upon his own acts, and he is in nowise bound by the acts of commission or omission of his former partner, unless he is a party thereto. Hence, in considering the evidence, the inquiry is whether the petitioner— not the several members of the firm—has wilfully concealed the estate, or the books of account, or writings relating thereto, or whether he has been guilty of fraud or negligence in withholding property from the assignee.

The testimony shows that the firm of Heller & Katz became hopelessly insolvent during the year 1877; that judgments to a large amount were obtained against it; and that all its available assets were sold by the sheriff of the county of Essex, in the month of October of that year, to satisfy the executions issued thereon. The partners ceased business on their own account after that time, but continued for some months afterwards to carry on the business as the agents of their largest execution creditors, who were the two brothers of the copartner, Katz.

Heller was employed there, with a weekly allowance for his services; but after awhile, deeming his compensation too small for the work done, he withdrew, leaving all the books and papers of the old firm in the possession and under the control of Katz.

An involuntary petition in bankruptcy was filed against the partnership in April, 1878. An adjudication was ordered and entered, but no assignee was appointed until July, 1879. On two different occasions afterwards, the assignee inquired of the bankrupt Heller for the books, writings, and papers of the late firm, and was told by Heller that he knew nothing about them; that he had never had the possession or control of them; and that everything belonging to the partnership had been left in the hands of the other partner, Katz. Not only have the opposing creditors failed to show that this statement was not true, but other evidence, put in by them, corroborates it. It would seem to be a singular perversion of language to hold that such conduct proves concealment. It proves quite the reverse. Considering this same specification in *Hammond* v. *Coolidge*, 3 N. B. R. 275, Judge Lowell says:

"The concealment of the books from the assignee does involve the question of intent. If the books were accidentally lost, before the bankruptcy, there can have been no such concealment. If they were not lost, but within the control of the defendants, and not given up on demand, with intent to prevent the assignee from obtaining them, but their existence denied, the charge is sustained."

Here their existence is not denied, but admitted. They were not within the control of the petitioning bankrupt. They were held by his late partner, Katz, and there was no evidence tending to prove that this bankrupt attempted to mislead the assignee, either as to their existence or where they were to be found. And so in regard to the remaining question of fraud and negligence in not delivering property to the assignee. The testimony under this specification had reference to the books of account. Whether the legislature meant to include them in the word "property," as used in the section of the act, is questionable; but even if it did, the charge is not sustained against one partner by proof that another partner refused or neglected to surrender them on demand.

The certificate of discharge will be signed.